690 So.2d 365 (1996)
C.L.C.
v.
J.D.A.
In the Matter of K.E.A.
2950356.
Court of Civil Appeals of Alabama.
May 24, 1996.
Rehearing Denied June 28, 1996.
Certiorari Denied March 21, 1997.
*366 Jon B. Terry of Bains and Terry, Bessemer, for Appellant.
Paul L. Spain, Birmingham, for Appellee.
Alabama Supreme Court 1951715.
RICHARD L. HOLMES, Retired Appellate Judge.
This is a child custody case.
C.L.C. (mother) and J.D.A. (father) are the parents of K.E.A. (child), who was born in November 1993. The parents are not married to one another and, in fact, have never been married to one another. However, the father was adjudicated to be the natural father of the child. The child and her mother are presently living with the maternal grandparents.
In January 1995 the maternal grandmother filed a petition, seeking to have the child declared as dependent and to terminate the parental rights of both the mother and the father. In her petition the maternal grandmother made no allegations against the father. The father filed an answer and a counterclaim, wherein he requested that the trial court award primary custody of the child to him.
In March 1995 the maternal grandmother withdrew her petition. At that point a custody battle ensued between the mother and the father.
After an ore tenus hearing, the trial court issued an order, finding the child to be dependent and awarding the custody, care, and control of the child to the father, with visitation rights vested in the mother. The mother filed a post-judgment motion, which was denied.
The mother appeals.
We note that even though the trial court found the child to be dependent, this case is solely a custody case. In fact, the trial court, in its court report, referred to the case as an "old-fashioned custody battle." Therefore, the sole issue on appeal is whether the trial court abused its discretion when it awarded the custody, care, and control of the child to the father.
At the outset we note that it is well settled that the issue of child custody falls within the sound discretion of the trial court and that its determination regarding this issue will not be disturbed on appeal unless there is a showing of plain or palpable abuse of discretion. Dobbins v. Dobbins, 602 So.2d 900 (Ala.Civ.App.1992).
Further, we would note that when considering custody matters, the trial court must determine what would be in the best interests and welfare of the child. Brown v. Brown, 602 So.2d 429 (Ala.Civ.App.1992).
With the above standard in mind, we do not deem it necessary to set out in detail the *367 full facts of this case. However, the following facts are pertinent to the trial court's findings: The maternal grandmother has been the primary caregiver for the child since the child's birth. The child and her mother presently live with the maternal grandparents. We note that there has been no prior judicial determination regarding the custody of the child. We also again reiterate that this is a custody dispute between the mother and the father of the child.
The mother attempted suicide in December 1994. She has been diagnosed with a personality disorder and is presently taking medication for depression. The court record indicates that, to prevent the mother from taking an overdose, as she has done in the past, the medication is administered to the mother by someone else. The mother has attended some counseling sessions for her problems.
The mother is not employed. She testified that she is presently seeking employment and would like to attend school. She recently obtained her G.E.D.
The mother testified that she has, to some extent, abused the child in the past because of her chemical imbalance and personality disorder. She stated, however, that she is "working on it, trying to do better."
The father testified that he has a job and is willing to care for his child. The child is currently on Medicaid. The father testified that he is willing to have the child placed on his medical insurance. The father has faithfully paid child support to the mother since his paternity was established and has exercised his visitation rights.
We would note that while the mother testified about periods wherein she has made some progress in attempting to adjust and to improve her circumstances and periods wherein she has participated in counseling, she has not significantly improved to the point that she could be relied upon to provide permanent custody and care of the child.
In light of the above, we find that there was evidence to support the determination of the trial court.
This judgment is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES, and CRAWLEY, JJ., concur.
MONROE, J. dissents.
MONROE, Judge, dissenting.
The mother raised the issue whether the trial court used the correct standard of review when it awarded custody of her daughter to the child's father. As the majority and the trial court both stress, this case is a custody case between the natural mother and the natural father. In its order awarding custody to the father, the trial court did not state the standard it applied, if any, in reaching its decision, and it did not favor us with any specific findings to support its decision. The court simply made the statement that it found that the child is dependentan irrelevant finding in an "old-fashioned custody battle"and awarded custody to the father. The court then set out a visitation schedule for the mother and pronounced the case closed.
Because there is no prior judgment granting custody to either parent, the correct standard to be applied in determining the custody arrangement is "the best interest of the child." Ex parte Couch, 521 So.2d 987 (Ala.1988); Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996). After reviewing the record in this case, I do not believe that awarding the father custody of the two-year-old child is in the child's best interest. I believe that the trial court abused its discretion in awarding custody to the father, therefore, I must respectfully dissent.
While I recognize that the McLendon standard does not apply in this case because there has been no prior judgment granting custody to one parent, I believe that one of the policy reasons behind McLendon is an important consideration whenever a change in custody is at issue, i.e., whether a change in custody "will more than offset the inherently *368 disruptive effect caused by uprooting the child." Jones v. Sprinkle, 621 So.2d 1341, 1342 (Ala.Civ.App.1993), citing Ex parte McLendon, 455 So.2d 863 (Ala.1984). See also, Ex parte Bryowsky, 676 So.2d 1322, n. 3 (Ala.1996). As a practical matter, whether a prior judgment exists has little or no relevance to a child who must leave a familiar home and family if custody is changed.
In this case, the parties never married each other, and the child has lived with her mother and maternal grandparents since birth. From the record, it appears that for all intents and purposes the child has been raised by her maternal grandmother, who is a nurse. The father lives at home with his parents and brother. He testified that when he has had the child during visitation, he always has someone help him feed the child, bathe the child, and change the child's diapers. When asked why he did not spend time alone with his child, he responded, "I do if I have to," then added that "[we] take care of her as a family." It appears from the evidence that, since her birth, the child has spent one night at her father's home. Because of an allegation of abuse, the father had not seen the child for several months prior to the custody hearing.
At the hearing, the father admitted that he had been arrested for theft and that he had smoked marijuana in the past, but he claimed that he does not smoke it any more. The father testified that he is engaged and that his fiance is willing to help with the child. The father also testified that he had been dating the mother off and on for three years and planned to marry her, but he broke up with her when she was four or five months pregnant.
After the trial court issued its order in this case, a friend of the mother signed an affidavit, submitted with the mother's motion for a new trial, saying that she believed the mother and her family had "done a good job in raising [the child]." In her affidavit, she went on to say that the year before, the father had come to her house with friends and was "acting somewhat strange." She also said that she smelled "something peculiar." The friend's daughter also signed an affidavit, submitted with the mother's motion for new trial, saying that that same night she saw the father smoking marijuana; that he had become violent and verbally abusive to the mother, who was with them; that she thought the mother was a good mother; and that she thought that the child "is best off with [the mother] and her real family."
Furthermore, the guardian ad litem appointed to represent the child said that although he believed this was a hard case, he would have to recommend that custody of the child be left with the mother. As the guardian ad litem pointed out, everything the father has done with or for the child has been done pursuant to an order of the court. Additionally, a report to the court prepared by a social worker with the state Department of Human Resources recommended that custody of the child be given to the maternal grandmother.
As I have stated in the past, I am troubled when the trial court disregards the recommendation of the guardian ad litem. The guardian ad litem is appointed to represent the interests of the child, not the interests of one parent or the other. See § 12-15-8, Ala.Code 1975. In this case, the trial court gave us no indication that the guardian ad litem's recommendation was even considered.
Based on all the evidence, I do not think it is reasonable to believe that the best interests of the child would be served by removing the child from the only home she has known and awarding custody to the father. It appears that neither parent is ready for the demands of parenthood, and neither possesses adequate parenting skills. Sadly, regardless of which parent has custody of the child, the responsibility of raising her will fall on the grandparents. From the evidence, it appears that the change in custody ordered by the trial court means that the child will be cared for by the father's parents rather than the mother's parents; and the maternal grandmother had earlier filed a petition to terminate the parents' parental rights so that she could adopt the girl. I do not think that a change in custody to the father would be in the best interest of the child, and it certainly will not "offset the inherently disruptive effect caused by uprooting the child." I believe *369 that the judgment of the trial court is plainly and palpably wrong, and therefore, that the judgment should be reversed.
At the very least, this case should be remanded to the circuit court with instructions for the court to apply the correct standard in awarding custody and to set forth at least some findings in support of its judgment. I must respectfully dissent.